FILED

NOT FOR PUBLICATION

MAR 06 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | ) BAP No. CC-12-1118-PaMkBe |
| | ) |
| KEVIN WASKO and CASSONDRA DEHAY, | ) Bankr. No. 07-10845-MT |
| | ) |
| Debtors. | ) Adv. Proc. 07-01136-MT |
| _____ | ) |
| | ) |
| STUART H. KAPLAN, M.D.; MOONDANCE, LLC, | ) |
| | ) |
| Appellants, | ) |
| | ) |
| v. | ) **M E M O R A N D U M**[1] |
| | ) |
| KEVIN WASKO; CASSONDRA DEHAY, | ) |
| | ) |
| Appellees. | ) |
| _____ | ) |

Argued and Submitted on November 15, 2012,
at Pasadena, California

Filed - March 6, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Maureen Tighe, Bankruptcy Judge, Presiding

Appearances:   Alan Wayne Forsley of Fredman Knupfer Lieberman LLP argued for appellants Stuart H. Kaplan, M.D. and Moondance, LLC; Jerome Bennett Friedman of Friedman Law Group, P.C. argued for appellees Kevin Wasko and Cassondra Dehay.

Before: PAPPAS, MARKELL and BEESLEY,[2] Bankruptcy Judges.

---

[1]  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2]  The Honorable Bruce T. Beesley, United States Bankruptcy Judge for the District of Nevada, sitting by designation.

-1-

The bankruptcy court granted the motion for summary judgment of appellants Stuart H. Kaplan, M.D. ("Kaplan") and Moondance LLC,[3] and determined that their claim under a state court judgment against chapter 7[4] debtors Kevin Wasko and Cassondra Dehay (collectively "Debtors") for $1,493,569.06 was excepted from discharge under §§ 523(a)(2), (a)(4) and (a)(6). The bankruptcy court declined, however, to grant Kaplan's motion to amend the summary judgment to include an exception to discharge for the state court's later award against Debtors of $495,642.97 in attorney's fees. Kaplan appeals the denial of that motion. On this record, we VACATE the bankruptcy court's order and REMAND this matter for further proceedings.

## FACTS

### The State Court Action

Kaplan is a dermatologist. Debtors jointly operated nightclubs both before and after their marriage in 2000. Sometime in 1997 or 1998, Debtors became Kaplan's patients. Their professional relationships developed into personal friendships.

In 2001, Debtors approached Kaplan with a proposal that he invest in a nightclub they intended to open and and operate in Marbella, Spain, called Luna Azul (the "Property") through a new company known as Spanish Investments Network ("SIN"). Debtors

---

[3] Moondance LLC is a company controlled by Kaplan. For convenience, we refer to both appellants as Kaplan.

[4] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as Civil Rules.

offered Kaplan a 50 percent ownership interest in SIN if he would give them $500,000. Kaplan agreed, and on March 6, 2002, wire transferred the $500,000 to the SIN bank account. In early April, 2002, Kaplan transferred an additional $250,000 to SIN. As the state court judge would later find, a few months after the funds were transferred, Debtors "ceased all communication with [Kaplan] and disappeared, without report on the status of the venture or any explanation." Statement of Decision, Kaplan v. Wasko, Case No. SC082177 (Los Angeles Superior Court, November 22, 2010) (hereafter "SOD").

On June 24, 2004, Kaplan filed suit against Debtors in Los Angeles Superior Court (the "State Court Action"). Kaplan's complaint, amended twice, alleged eleven causes of action against Debtors, including fraud and breach of fiduciary duty. Kaplan sought to recover the $750,000 investment, plus interest, punitive damages, attorney's fees and costs.

On March 19, 2007, Debtors filed a bankruptcy petition.[5] Their schedule E listed a contingent, unliquidated, disputed debt to Kaplan for $750,000.

Shortly thereafter, on March 26, 2007, Debtors caused the State Court Action to be removed to the bankruptcy court. Despite Debtors' objection, the bankruptcy court remanded the State Court Action to the state court on June 7, 2007.

Few details concerning the subsequent proceedings in the State Court Action were included in the appellate record.

_____

[5] While Debtors originally sought relief under chapter 11, the bankruptcy court granted Debtors' motion to convert the case to chapter 7 on October 24, 2011.

-3-

However, it appears that the state court bifurcated the issues for trial. The first phase of the bench trial occurred from February 23 to April 28, 2010, and addressed the liability and compensatory damage issues. The state court issued a tentative decision finding in favor of Kaplan and against Debtors on the liability issues, and determining that Kaplan was entitled to an award of compensatory damages. While the state court expected to begin the second phase of the trial concerning Kaplan's claim for punitive damages on October 27, 2010, the parties stipulated to an award of $100,000 in exemplary damages, which the state court could incorporate in its judgment.

The state court then issued a detailed statement of decision, explaining, in part, that:

> The evidence at trial of defendants' misconduct, fraud and breaches of fiduciary duties established that the conduct of both defendants was willful, and that each of them acted fraudulently and with malice.

SOD at 39. The state court entered a judgment ("Judgment") for Kaplan and against Debtors on November 22, 2010. It granted relief to Kaplan based upon Debtors' negligent misrepresentation; deceit and fraud in the inducement; breach of fiduciary duty; money had and received; breach of oral contract; conspiracy; and embezzlement. The Judgment awarded Kaplan $750,000 in compensatory damages from Debtors plus interest. Per the parties' stipulation, the court also awarded Kaplan $100,000, plus interest, in exemplary damages for fraud, breach of fiduciary duty, conspiracy and embezzlement. Debtors did not appeal the Judgment.

At some later date not clear in the record, Kaplan filed a

motion under Cal. Code Civ. Proc. § 2033.420[6] requesting cost-of-proof sanctions against Debtors for failing to admit certain Requests for Admissions (the "RFA Motion"). The state court held a hearing on the RFA Motion on February 9, 2011. A hearing transcript is not included in our record.

After the hearing and supplemental briefing by the parties, on June 29, 2011, the state court entered an order granting Kaplan's motion and imposing sanctions against Debtors under the California statute (the "RFA Sanctions Order"). In the order, the court found that Debtors had each failed to admit to the Requests for Admission, and that:

> these requests sought admission of matters within the knowledge of [Debtors], and plaintiffs ultimately proved the subject matter of the requests true at trial. [Their] failure to admit these requests was in bad faith and part of a scheme that defendants employed to wrongfully take and convert plaintiffs' investment.

RFA Sanctions Order at 2-3 ¶¶ 1-2. The state court awarded Kaplan "$495,642.97, jointly and severally against [Debtors], pursuant to Code of Civil Procedure section 2033.420 for [his] costs in proving the subject matter of the requests for admission addressed by the motion[.]" RFA Sanctions Order at 7 ¶ 24. The state court

---

[6] **Expenses incurred in proving matters which party to whom request was directed failed to admit; When court to require payment**

(a) If a party fails to admit the genuineness of any document or the truth of any matter when requested to do so under this chapter, and if the party requesting that admission thereafter proves the genuineness of that document or the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees.

CAL. CODE CIV. PROC. § 2033.420.

-5-

based the amount of the award on the report submitted by Kaplan's attorney containing "a detailed accounting of the number of hours spent in proving the matters required to [be] proved solely due to Defendants' unreasonable — and dishonest — failure to admit these matters." RFA Sanctions Order at 7 ¶ 21.

### The Adversary Proceeding

In June 2007, shortly after the bankruptcy court remanded the State Court Action, Kaplan had commenced an adversary proceeding against Debtors seeking an exception to discharge for his claims against Debtors under § 523(a)(2)(A), (a)(4) and (a)(6). The bankruptcy court held this adversary proceeding in abeyance while the State Court Action proceeded to a conclusion.

After the state court's entry of the Judgment and RFA Sanctions Order, on July 21, 2011, Kaplan filed a motion for summary judgment in the adversary proceeding. Specifically, Kaplan argued that there were no genuine issues of fact, and that both the state court Judgment and RFA Sanctions Order were preclusive and controlled the disposition of his discharge exception claims in the adversary proceeding.

Debtors filed a limited opposition to the summary judgment motion on August 19, 2011. Although they did not contest Kaplan's request for an exception to discharge for the Judgment, they argued that the RFA Sanctions Order was not yet a final judgment and that they intended to appeal that order in the state court system.[7]

The bankruptcy court conducted a hearing on the Kaplan

_____

[7] The RFA Sanctions Order was never appealed.

-6-

summary judgment motion on September 1, 2011. Without opposition, the court granted Kaplan an exception to discharge under § 523(a)(2)(A), (a)(4) and (a)(6) for $1,493,569.06, the damages awarded to him in the Judgment. Agreeing with Debtors, the bankruptcy court denied the motion as to the RFA Sanctions Order because it was not yet a final order of the state court (the "Summary Judgment Order"). The Summary Judgment Order granted leave to Kaplan to amend their summary judgment motion when the RFA Sanctions Order became a final order.

On November 15, 2011, Kaplan filed a motion to amend the Summary Judgment Order[8] to add the award made in the RFA Sanctions Order, which was now final. To support this motion, Kaplan relied upon this Panel's decisions in Florida v. Ticor Title Ins. Co. (In re Florida), 164 B.R. 636 (9th Cir. BAP 1994) and Roussos v. Michaelides (In re Roussos), 251 B.R. 86 (9th Cir. BAP 2000) which he contended had held that a debt for a creditor's attorney's fees and costs awarded under state law should be excepted from discharge if that obligation arose from the same conduct that gave rise to the underlying indebtedness. Kaplan argued that the RFA Sanctions Order arose from the same conduct by Debtors as that giving rise to the other damages awarded in the nondischargeable Judgment, and therefore, that the attorney's fees award should also be excepted from discharge.

---

[8] Although the bankruptcy court granted Kaplan leave to amend the summary judgment motion, Kaplan moved to amend the Summary Judgment Order. The bankruptcy court did not find this procedure objectionable, nor do we. In effect, by this motion, Kaplan renewed his request for entry of a summary judgment determining that the award to Kaplan in the RFA Sanctions Motion was excepted from discharge.

-7-

Debtors responded to Kaplan's motion to amend the Summary Judgment Order on November 28, 2011. Debtors argued that, unless there is an underlying statutory or contractual basis for awarding attorney's fees, then any award, even when ancillary to the nondischargeable claim, is subject to discharge.

The bankruptcy court conducted a hearing on Kaplan's motion to amend on December 7, 2011. After considering the parties' arguments, the court continued the hearing so that it could review the case law.

At the continued hearing on February 15, 2012, the bankruptcy court announced its decision on the record. It denied Kaplan's motion to amend the summary judgment to include an exception to discharge for the attorneys fees awarded in the RFA Sanctions Order because, in the words of the bankruptcy court, those fees "as they've been awarded below, are not directly consequential from the nondischargeability issue." Hr'g Tr. 1:22-23, February 15, 2012.

The bankruptcy court's order denying Kaplan's motion was entered on February 21, 2012 (the "Second Summary Judgment Order"). Kaplan filed a timely appeal on March 6, 2012.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court erred when it denied Kaplan's motion for to amend the summary judgment and determined that the award of attorneys fees by the state court in the RFA Sanctions Order was not excepted from discharge.

-8-

Whether the bankruptcy court erred in determining that issue preclusion was not available or applicable to the RFA Sanctions Order.

**STANDARDS OF REVIEW**

We review de novo the bankruptcy court's decisions concerning summary judgment. SNTL Corp. v. Ctr. Ins. Co. (In re SNTL Corp.), 571 F.3d 826, 834 (9th Cir. 2009). Where no factual dispute exists on an appeal regarding exception to discharge, the review is de novo. Waag v. Permann (In re Waag), 418 B.R. 373, 376 (9th Cir. BAP 2009).

The availability of issue preclusion is reviewed de novo. George v. City of Morro Bay (In re George), 318 B.R. 729, 732-33 (9th Cir. BAP 2004), aff'd, 144 F.App'x. 636 (9th Cir. 2005). Once it is determined that issue preclusion may be applied, the trial court's decision to do so is reviewed for abuse of discretion. Id. at 733. In determining whether to apply issue preclusion, the court is to be given broad discretion in light of the advantages of avoiding burdensome litigation and promoting judicial economy. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 321 (1979). Reasonable doubts about what was decided in a prior judgment are resolved against applying issue preclusion. Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 107-08 (9th Cir. BAP 2007).

**DISCUSSION**

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

-9-

Civil Rule 56(c)(2), incorporated by Rule 7056; Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 707 (9th Cir. 2008). Exceptions to discharge must be strictly construed. Snoke v. Riso (In re Riso), 978 F.2d 1151, 1154 (9th Cir. 1992) ("[G]iven the strong fresh start policy in the Code, exceptions to discharge are strictly construed against an objecting creditor and in favor of the debtor.); Ghomeshi v. Sabban (In re Sabban), 384 B.R. 1, 5 (9th Cir. BAP 2008), aff'd, 600 F.3d 1219, 1222 (9th Cir. 2010). A trial court may grant summary judgment on the basis of issue preclusion. Granite Rock Co. v. Int'l Bhd. of Teamsters, Local 287, 649 F.3d 1067, 1070 (9th Cir. 2011).

In this appeal, the bankruptcy court effectively granted summary judgment twice. First, without opposition from Debtors, it determined in the Summary Judgment Order that, based on issue preclusion, the damages awarded by the state court to Kaplan in the Judgment were excepted from discharge under §§ 523(a)(2), (a)(4) and (a)(6). However, in the Summary Judgment Order, the bankruptcy court declined to allow an exception to discharge of the attorney's fees awarded to Kaplan in the RFA Sanctions Order because, it decided, there was an "issue of contention" as to whether the RFA Sanctions Order should be "given the same preclusive effect as that given the Judgment." Tentative Ruling (adopted in the Summary Judgment Order) at 2, September 1, 2011.

Then, after the RFA Sanctions Order became final, at the hearing on February 15, 2012, the bankruptcy court not only denied Kaplan's motion to amend the Summary Judgment Order to include an exception to discharge for the RFA Sanctions Order, but the court effectively held that the attorney's fees awarded by the state

-10-

court were indeed discharged.  According to the bankruptcy court:

> [T]he Florida case is actually not controlling here because the attorney fees, as they've been awarded below, are not directly consequential from the nondischargeability issue. . . .  And the dischargeability status depends on the primary debt that's nondischargeable. . . . [T]his is on [] giving preclusive effect to an earlier judgment, and the Court needs to evaluate all the factors on whether it's a fair and good policy to give preclusive effect.  It doesn't — it's not supported.

Hr'g Tr. 1:21–2:11, February 15, 2012.

As near as we can discern, the bankruptcy court apparently decided that issue preclusion should not be applied to the state court's findings in the RFA Sanctions Order in deciding whether the attorney's fees it awarded could be discharged.  In its oral ruling, the bankruptcy court did not clearly articulate why it declined to apply issue preclusion, nor did it identify "all the factors" it considered in reaching its conclusion.  As explained below, these omissions are problematic.

### Availability of Issue Preclusion

Simply stated, issue preclusion "bars 'successive litigation of an issue of fact or law that was actually litigated and resolved in a valid court determination essential to that prior judgment,' even if the issue recurs in the context of a different claim."  Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (quoting New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001)).  The purpose of issue preclusion is to conserve judicial resources and foster confidence in the outcome of adjudications by providing finality and avoiding inconsistent rulings.  See Taylor, 553 U.S. at 892.  It is settled that issue preclusion may be applied in exception to discharge proceedings.  Grogan v. Garner, 498 U.S. 279, 284-85

-11-

(1991).

The RFA Sanction Order was entered by a California state court. To determine the preclusive effect of a California state court's findings in a judgment or order, the bankruptcy court must first determine if issue preclusion is available under California preclusion law. 28 U.S.C. § 1738 (the Full Faith and Credit Statute); Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985). When state preclusion law controls, the discretion to apply the doctrine is exercised in accordance with state and federal law. Khaligh v. Hadegh (In re Khaligh), 338 B.R. 817, 823 (9th Cir. BAP 2006), aff'd, 506 F.3d 956 (9th Cir. 2007).

Under California law, the party asserting issue preclusion has the burden of establishing the following "threshold" requirements for its availability:

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001) (the "Harmon" requirements).

Here, there does not appear to be any dispute that some of the Harmon criteria are satisfied by the RFA Sanctions Order. It was a final order, and the parties and their adversarial positions in state court were the same as in this litigation. What is disputed in this appeal, however, is whether the issue decided in

-12-

state court, i.e., Debtors' liability for attorneys' fees to Kaplan under Cal. Code Civ. Proc. § 2033.420, was identical, actually litigated, and necessarily decided in relation to the issues before the bankruptcy court, i.e., whether that "debt" arose from conduct of the type giving rise to an exception to discharge under § 523(a)(2), (a)(4) and/or (a)(6).

In reaching its decision, there is no indication in the record before us that the bankruptcy court conducted a review of the RFA Sanctions Order to address the three questionable <u>Harmon</u> factors. Instead, the bankruptcy court appears to have ruled that issue preclusion would not be applied for reasons of public policy: "[T]his is on [] giving preclusive effect to an earlier judgment, and the Court needs to evaluate all the factors on whether it's a fair and good policy to give preclusive effect [to the RFA Sanctions Order.] It doesn't — it's not supported." Hr'g Tr. 27-11, February 15, 2012.

In short, the bankruptcy court acknowledges that it was conducting an issue preclusion analysis of the RFA Sanctions Order. However, the court did not explain what factors it was evaluating or why it was not "fair and good policy to give preclusive effect" to the RFA Sanctions Order. Further, it would appear that the court conflated whether issue preclusion was in fact available with the second part of the analysis, whether it should be applied.

<u>Application of Issue Preclusion in Exceptions to Discharge</u>

Bankruptcy courts "have exclusive jurisdiction to determine dischargeability of debts under §§ 523(a)(2) (fraud and deception); (a)(4) (fiduciary fraud, embezzlement, or larceny);

-13-

and (a)(6) (willful and malicious injury to person or property)." Ackerman v. Eber (In re Eber), 687 F.3d 1123, 1128 (9th Cir. 2012); see § 523(c)(1). The effect of this rule is that "the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of [a creditor's] debt." Brown v. Felsen, 442 U.S. 127, 129-30 (1979). In other words, "final judgments in state courts are not necessarily preclusive in United States bankruptcy courts." Sasson v. Sokoloff (In re Sasson), 424 F.3d 864, 872 (9th Cir. 2005).

Therefore, although all federal courts have "broad discretion" in a decision to apply issue preclusion based on a state court judgment, Parklane Hosiery Co., 439 U.S. at 331, that discretion is particularly expansive in exceptions to discharge under § 523(a)(2), (a)(4) and (a)(6). Comer v. Comer (In re Comer), 723 F.2d 737, 740 (9th Cir. 1984) (holding that a bankruptcy judge should not "rely solely on state court judgments when determining the nature of a debt for purposes of dischargeability, if doing so would prohibit the bankruptcy court from exercising its exclusive jurisdiction to determine dischargeability.")

The Panel has previously provided guidelines for bankruptcy courts on how to satisfy their independent responsibility to determine if the findings of a state court judgment should be applied to justify an exception to discharge based on issue preclusion. In re Lopez, 367 B.R. at 99. Observing that, "at its heart, the decision to apply issue preclusion entails a measure of discretion and flexibility," id. at 107, the Panel noted that

-14-

bankruptcy courts are guided by the concepts incorporated in the Restatement (Second) of Judgments:

> "the need for flexibility in the operative principles, and this recognition has served as the basis for the exceptions to the rule of issue preclusion set forth in § 28." RESTATEMENT (SECOND) OF JUDGMENTS, Title E, Introductory Note (1980). The exceptions to the general rule of issue preclusion that are set out in Restatement (Second) § 28 include such flexible concepts as: change in applicable legal context; avoiding inequitable administration of laws; differences in quality or extensiveness of procedures; and lack of adequate opportunity or incentive to obtain a full and fair adjudication in the initial action. Id. §§ 28(2), (3) & (5).

Id.; see also Parklane Hosiery Co., 439 U.S. at 327 n.6, 330 n.13, 331 n.14, 333 n.21, 353, 354 n.22 (where the Supreme Court cites the Restatement and Restatement (Second) of Judgments repeatedly as authoritative on questions of issue preclusion).

Although the Lopez panel recognized that application of issue preclusion in exception to discharge cases is principally a question of federal law, it understood that, where a state law judgment is available for issue preclusion, state (California) law still must be taken into consideration. Fortunately,

> California law is consistent with federal law on the question of discretionary application of issue preclusion. In California, issue preclusion is not applied automatically or rigidly, and courts are permitted to decline to give issue preclusive effect to prior judgments in deference of countervailing considerations of fairness. The court balances "the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present the facts." Thus, policy considerations may limit use of issue preclusion in any particular instance.

In re Lopez, 367 B.R. at 108 (citations omitted); see also, Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 828 (9th Cir. BAP 2006), aff'd 506 F.3d 956 (9th Cir. 2007) (noting that the California courts "take into account the considerations

-15-

articulated in Restatement (Second) of Judgments.").

In this appeal, our ability to review the bankruptcy court's decision is hampered by the brevity of its analysis in its oral ruling. The court did not engage in an analysis concerning whether the RFA Sanctions Order satisfied the five Harmon factors. If the bankruptcy court ruled that issue preclusion was not available under state law, it was unnecessary to reach the discretionary question of its application in this case. As noted above, the court seemingly declined to apply issue preclusion for policy reasons, but did not explain what factors or considerations it relied upon for its decision.

Given this record, we must remand this matter to the bankruptcy court with instructions that it conduct an adequate issue preclusion analysis concerning the state court's RFA Sanctions Order. To do so, it should first examine the five Harmon factors paying particular attention to the three factors in dispute — whether the issues decided by the state court in the RFA Sanctions Order were identical, actually litigated, and necessarily decided in relation to the exception to discharge issues before the bankruptcy court.[9] Then, if the bankruptcy

_____

[9] To determine if an issue is identical to the issue before the court deciding preclusion and whether it has been actually litigated, we are required to examine the record in the prior court's case. United States v. Hernandez, 572 F.2d 218, 222 (9th Cir. 1978). Based on what has been submitted to us, it may be that the bankruptcy court had an inadequate record to make that determination. In essence, the bankruptcy court was given only the RFA Sanctions Order, which imposed attorney's fees on Debtors because of their failure to admit as fact matters specified in the RFAs that Kaplan was later required to prove at trial. The RFA Sanctions Order lists 27 RFAs that Wasko failed to answer, and 30 RFAs that Dehay failed to answer. However, the RFA Sanctions
(continued...)

-16-

court determines that issue preclusion is available, it should exercise its independent duty to determine if issue preclusion should apply in this case, guided by the federal and California guidelines discussed above.

<u>In light of the facts of this case and the case law, an issue preclusion analysis of the RFA Sanctions Order was required</u>.

The RFA Sanctions Order and the Summary Judgment Order were separate orders. In the Summary Judgment Order, based upon Debtors' prebankruptcy conduct in their dealings with Kaplan, the bankruptcy court found that the state court had made the necessary findings of fact to support an exception to discharge in Kaplan's favor under §§ 523(a)(2)(A), (a)(4) and (a)(6). Debtors have not challenged the bankruptcy court's decision.

On remand, the bankruptcy court must also determine whether the RFA Sanctions Order preclusively establishes an exception to discharge. As Debtors note, in contrast to the Summary Judgment Order, the RFA Sanctions Order resulted solely from their post-bankruptcy failure to comply with discovery rules in the state court litigation. In other words, the attorneys fee award in the RFA Sanctions Order did not directly result from the same conduct

[9](...continued)
Order did not explain what facts those RFAs specifically addressed. We have examined the docket and it does not appear that the bankruptcy court was ever given copies of the RFAs. Additionally, counsel for Debtors offered to provide the bankruptcy court with a transcript of the hearing where the state court explained its reasons for granting the attorney's fee award in the RFA Sanctions Order, but there is no indication that the transcript was ever provided, nor does it appear in the court's docket. Hr'g Tr. 6:16-20, Dec. 7, 2011. On remand, to perform a proper issue preclusion analysis, the bankruptcy court may wish to obtain copies of the RFAs and the state court hearing transcript.

-17-

giving rise to the Judgment. Because the two state court orders were based ostensibly on conduct occurring at different times in relation to Debtors' bankruptcy filing, a determination that the Judgment is excepted from discharge would not necessarily require that the amounts awarded to Kaplan under the state court's second, independent order, were also nondischargeable.

As noted above, there is a strong bankruptcy policy that exceptions to discharge are to be strictly construed so as to effectuate the Congressional policy of permitting debtors a financial fresh start and against the creditor. In re Riso, 978 F.2d at 1154; In re Rahm, 641 F.2d 755, 756-57 (9th Cir. 1981); In re Sabban, 384 B.R. at 5. Despite this, Kaplan argues, case law supports his position that "once it is established that "specific money or property has been obtained by fraud . . . any debt arising therefrom is excepted from discharge." Kaplan's Op. Br. at 7 (quoting Cohen v. De la Cruz, 523 U.S. 213, 218 (1998)). Kaplan's argument implies that, once a bankruptcy court decides to except a debt from discharge based on issue preclusion, any attorney's fees associated with that debt are also excepted from discharge, without the need for a separate issue preclusion inquiry. We disagree with Kaplan's reading of Cohen that no separate issue preclusion inquiry is necessary.

In Cohen, the Supreme Court held that, for purposes of § 523(a)(2), "any debt" arising from a judicial determination of fraud is likewise excepted from discharge, and in that case, "any debt" included the "treble damages, attorney's fees and other relief" awarded to the creditor under state law. Id. at 223. In that case the court agreed with the bankruptcy court that, because

-18-

the creditor's nondischargeable claim against the debtor arose under New Jersey's rent control statute, an award to the creditor under a related statute providing for recovery of attorney's fees in actions for violations of the statutory rent controls was also excepted from discharge.[10] <u>Cohen</u>, 523 U.S. at 218. Strictly speaking, then, the rule announced in <u>Cohen</u> dealt only with exceptions to discharge for attorney's fees where there was a connection between a statute authorizing the fee award, and the

---

[10] The two statutes cited in the <u>Cohen</u> decision were:

**N.J. Stat. § 56:8-2. Fraud, etc., in connection with sale or advertisement of merchandise or real estate as unlawful practice**

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an <u>unlawful practice</u>[.]

**N.J. Stat. § 56:8-19. Action, counterclaim by injured person; recovery of damages, costs**

> Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section, including those brought by the Attorney General, the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.

These are the texts of the statutes in effect in 1998 when the Supreme Court issued its decision in <u>Cohen</u>.

-19-

statutes establishing the debtor's liability for the creditor's claim.

Applying Cohen, four courts of appeals have adopted what the parties in this appeal describe as a "statutory/contractual basis" analysis in this context. Under this approach to construing § 523(a), attorney fee awards are excepted from discharge only when based on a statute or contract[11] related to the creditor's underlying claim. Transouth Fin. Corp of Fla. v. Johnson, 931 F.2d 1505, 1509 (11th Cir. 1991); United Merchants and Manufacturers Inc. v. Equitable Life Assurance Society of the United States (In re United Merchants and Manufacturers), 674 F.2d 134 (2nd Cir. 1982); Fry v. Dinan (In re Dinan), 448 B.R. 775, 778 (9th Cir. BAP 2011); Florida v. Ticor Title Ins. Co. (In re Florida), 164 B.R. 636, 639 (9th Cir. BAP 1994).[12]

---

[11]  As the case law demonstrates, where there is a contractual basis for the award of attorney's fees awarded in a nondischargeable judgment, such fees may also be excepted from discharge. Jordan v. Se. Nat'l Bank (In re Jordan), 927 F.2d 221, 226-28 (5th Cir. 1991) (finding that a debt excepted from discharge "includes state-approved contractually required attorney's fees")(quoting Martin v. Bank of Germantown (In re Martin), 761 F.2d 1163, 1168 (6th Cir. 1985)).  Because there was no written contract between the parties in this case providing for an award of attorney fees to the prevailing party, we need not consider that case law here.

[12]  There was also some discussion in the bankruptcy court of a less numerous, minority line of decisions espousing a so-called "status-dependent" approach to determine whether attorney's fees awards are subject to discharge in this context.  As explained in these decisions, whether there is a contractual or statutory basis for the award of attorney's fees is not determinative.  Instead, "the dischargeability of ancillary obligations such as attorney's fees turn[s] on the dischargeability of the underlying debt. . ." DuPhily v. DuPhily, 52 B.R. 971, 978 (D. Del. 1985) (citing In re Chambers, 36 B.R. 42 (Bankr. D. Wis. 1984); In re Sposa, 31 B.R. 307 (Bankr. E.D. Va. 1983)).  As discussed below, the Panel has adopted the statutory/contractual position in our
(continued...)

-20-

Both Kaplan and Debtors in this appeal cite to the Panel's opinion in In re Florida to support their positions. As the bankruptcy court correctly determined, but for possibly different reasons than our own, In re Florida is not controlling on the availability of issue preclusion in this case. However, since In re Florida was a published opinion, and we are bound by its holdings, we will examine it in detail.

In In re Florida, before bankruptcy, Ticor sued Alvin Florida in U.S. district court. After a bench trial, the district court found that Florida, in attempting to sell certain property, had forged a release of an I.R.S. lien. Because Ticor had insured title to the property free of the I.R.S. lien, it was forced to pay its insured when the release was discovered and then revoked by the I.R.S. The district court found Ticor's actual loss was $153,922, trebled these damages pursuant to the RICO statute, 18 U.S.C § 1961 et seq., and awarded attorney's fees of $124,950 to Ticor pursuant to the remedies provision of RICO, 18 U.S.C. § 1964(c).[13] Finding that the forgery was "malicious, fraudulent and oppressive," the district court awarded a coextensive judgment to Ticor against Florida consisting of $153,922 in compensatory

---

[12](...continued)
published decision In re Florida and thus we do not consider this alternative view.

[13] 18 U.S.C. § 1964(c) provides that:

Any person injured in his business or property by reason of a violation of section 1962 of [the RICO statute] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee[.]

-21-

damages and $307,844 in punitive damages, and a small discovery sanction.[14] The judgment was affirmed on appeal.

After Florida filed for bankruptcy, Ticor sought an exception to discharge of its debt under § 523(a)(2) and (6). Acting on the creditor's motion for summary judgment, the bankruptcy court determined the debts to be excepted from discharge in total under § 523(a)(6), including the amounts representing Ticor's litigation expenses in the state court suit and the discovery sanction.

On appeal to the BAP, Florida challenged the bankruptcy court's determination that the discovery sanction and attorney's fees were excepted from discharge. The Panel ruled,

> Florida contends that all damages awarded under the RICO claim, including the discovery sanction and attorney's fees, are punitive. Florida's description of these elements as punitive damages somewhat mischaracterizes them. The bankruptcy court found that those portions of the claim based on attorney's fees and costs and the discovery sanction were debts which were ancillary to the underlying debt and partook of its character.

Id. at 639.

In this case, the parties have differing views about how the attorney's fees awarded in Florida "partook of the character" of the nondischargeable debt, and whether that participation justified exception to discharge for the attorney's fee award. However, the full context of the Panel's decision reveals that the attorney's fees were awarded for violation of the RICO statute, which proscribed conduct that the Bankruptcy Code would consider

---

[14] Other than noting that the discovery sanction was for $15,000, little information about it is provided in the Florida decision. It was, however, "awarded under the RICO claim," In re Florida, 164 B.R. at 639, and thus was awarded, like the attorney's fees, on the basis of a statute.

-22-

grounds for an exception to discharge. Therefore, like Cohen, In re Florida stands for the proposition that violation of a statute that provides for an award of attorney's fees for conduct which the Bankruptcy Code considers grounds for exception to discharge may result in denial of discharge for those attorney's fees.

In this appeal, the statute on which the RFA Sanctions Order was based, Cal. Code Civ. Proc. § 2033.420, sanctions the failure to respond to requests for admission of facts that then requires a party to prove them. In other words, under the statute, an award of attorney's fees may be made for conduct that a bankruptcy court may find does not support an exception to discharge.

On remand to the bankruptcy court, Kaplan is free to argue that, like the state court apparently found, Debtors' failure to respond to the RFAs was part of Debtors' scheme to defraud him. In that respect, Kaplan may contend that there is an identity of issues between the FRA Sanctions Order and the bankruptcy court's determination that the Judgment debt is excepted from discharge under § 523(a)(2), (a)(4) or (a)(6). However, in light of the strong policy considerations in bankruptcy law that exceptions to discharge are narrowly construed, and the issue preclusion case law discussed above, attorney's fees awarded under a statute will be excepted from discharge only if that statute proscribes conduct that violates one of the provisions of § 523(a).[15] Because an

_____

[15] Indeed, In re Florida cautions against recognizing a remote connection between conduct that results in an exception to discharge judgment and the conduct resulting in the award of attorney's fees: "It may be that the relationship of ancillary to
(continued...)

-23-

award of attorney's fees under Cal. Code Civ. Proc. § 2033.420 does not necessarily result from conduct proscribed in the Bankruptcy Code, an award of attorneys fees under that statute is not automatically excepted from discharge.

**CONCLUSION**

The bankruptcy court must conduct an analysis of the availability and applicability of issue preclusion to the RFA Sanctions Order.  Even if the bankruptcy court determines that issue preclusion is available, it must then, as a matter of discretion, decide whether the doctrine should or should not be applied.  Assuming issue preclusion is both available and applicable, the bankruptcy court must then independently decide whether the conduct giving rise to the award of attorney's fees to Kaplan in this case is sufficient to support an exception to discharge under § § 523(a)(2), (4), or (6).

We VACATE the bankruptcy court's order denying Kaplan's motion to amend the summary judgment order to add an exception to discharge for the attorneys fees awarded in the RFA Sanctions Order.  We REMAND this matter to the bankruptcy court for further proceedings consistent with this memorandum.

---

[15](...continued)
primary obligations can become so attenuated that it would be unreasonable to characterize them as integral to the original willful and malicious injury."  164 B.R. at 639.